# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| BRENDA M., | No. 25-cv-3013-CJW |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Brenda M. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

Claimant was born in 1973. (AR[1] at 415.) She completed the eleventh grade and later completed training as a CNA. (*Id.* at 597.) Claimant allegedly became disabled due to schizophrenia, depression, and recovering drug addiction. (*Id.* at 596.) Claimant's alleged onset of disability date is April 1, 2020. (*Id.* at 511.) On December 13, 2022, Claimant protectively filed his application for DIB. (*Id.* at 215, 511.) Her claim was denied originally on February 2, 2023 (*id.* at 215, 415-23), and was denied on reconsideration on April 19, 2023. (*Id.* at 424-32.) A hearing was held on October 26,

---

[1] "AR" cites refer to pages in the Administrative Record.

2023, with Claimant and her attorney Joshua Eberle appearing by telephone before Administrative Law Judge ("ALJ") Erin T. Schmidt. (*Id*. at 383-414.) Vocational Expert ("VE") Jeff Johnson also appeared at the hearing telephonically. (*Id*.) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on February 6, 2024. (*Id*. at 215-25.)

Claimant requested review and the Appeals Council denied review on December 20, 2024. (*Id*. at 5-8.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On August 8, 2023, Claimant timely filed his Complaint in this Court. (Doc. 5.) On October 28, 2025, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id*. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id*. An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

4

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A. The ALJ's Findings

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2023. (AR at 217.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her amended alleged onset date of October 7, 2022 through her date last insured of December 31, 2023.[2] (*Id*. at 218.) At the second step, the ALJ concluded from the medical evidence that through the date last insured Claimant suffered from the following severe impairments: major depressive disorder, generalized anxiety disorder, and methamphetamine dependence. (*Id*.) At the third step, the ALJ found that through the date last insured Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id*. at 219.) The ALJ evaluated Claimant's claims under listing 12.04 (depressive disorders) and 12.06 (anxiety disorders). (*Id*.) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id*. at 219-20.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks; only occasionally interact with supervisors, co-workers and the public; and can perform no fast paced production requirements, defined as work requiring more than frequent handling, fingering or reaching.

---

[2] At the administrative hearing held on October 26, 2023, Claimant's attorney amended the alleged disability onset date from April 1, 2020 to October 7, 2022. (AR at 391.)

5

(*Id*. at 220.) Also at the fourth step, the ALJ determined that through the date last insured Claimant was unable to perform her past relevant work. (*Id*. at 223.) At step five, the ALJ found that through the date last insured there were jobs that existed in significant numbers in the national economy Claimant could perform, including hand packager, cleaner, and dietary aide. (*Id*. at 224.) Thus, the ALJ concluded that Claimant was not disabled. (*Id*. at 225.)

### B.     *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that

6

detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to account for Claimant having moderate limitations in adapting and managing oneself in the RFC; and (B) failing to adequately evaluate and consider Claimant's invasive lobular carcinoma in determining the RFC. (Doc. 10.)

### A. *RFC Assessment relating to Adapting and Managing*

#### 1. *Parties' Arguments*

Claimant argues that "[d]espite explicitly recognizing in Paragraph B findings that the medical records and [Claimant's] statements supported moderate limitations in adapting and managing oneself, the ALJ's RFC assessment did not account for any limitations in adapting and managing." (Doc. 18 at 10.) Claimant maintains that the ALJ's "failure to explain why limitations in adapting and managing were omitted prevents meaningful judicial review and fails to 'build an accurate and logical bridge' from the

7

moderate limitations assessed in the domain of adapting and managing to the RFC which does not account for any such limitations." (*Id.* at 12.)

The Commissioner argues that "[i]t is [Claimant's] burden to prove the RFC finding should be more restrictive and she failed to cite any objective evidence in support of her claims." (Doc. 19 at 5-6.) The Commissioner asserts that the ALJ "specifically explained that greater mental restrictions were not warranted after a detailed discussion of the evidence, explaining that repeatedly normal psychological findings, relief with medications, and work activities failed to align with her claims of disability." (*Id.* at 6) (citing AR at 223).

### 2. Relevant Law

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

### 3. Analysis

At step three of the evaluation process, the ALJ considered Claimant's ability to adapt and manage herself under the "paragraph B" criteria, determining that:

8

> As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant reported that she did not handle stress well or changes in her routine. Ex. 7E/7. Nonetheless, the claimant reported that she had no problems with her personal care. Ex. 7E/2. She reported that she could prepare her own meals, do cleaning and laundry, shop in stores, pay bills, count change, handle a savings account and use a checkbook. Ex. 7E/3-4. On exam, the claimant's judgment was assessed as fair, but also that she was capable of reality-based thinking. Ex. 1F/33; 3F/9; 6F/7. A moderate limitation is warranted.

(AR at 219-20.) At step four, the ALJ determined Claimant's RFC as follows:

> through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks; only occasionally interact with supervisors, co-workers and the public; and can perform no fast paced production requirements, defined as work requiring more than frequent handling, fingering or reaching.

(*Id.* at 220.) Claimant argues that the RFC's lack of limitations in adapting and managing oneself is error. The Claimant is wrong. "While the RFC findings did not specify work-related limitations based on some moderate functional-area limitations that the ALJ found under the "paragraph B" criteria, the two findings serve distinct purposes at the separate steps of the sequential evaluation process." *West-Viotay v. Saul*, 829 Fed. App'x 149, 150 (8th Cir. 2020) (per curiam) (unplublished); *see also* Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) ("[T]he different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized"); *Hammer v. O'Malley*, No. 2:23-CV-28 HEA, 2024 WL 4345755, at *5 (E.D. Mo. Sept. 30, 2024) ("In its own research, the Court has found no case where the Eighth Circuit Court of Appeals reversed because the ALJ failed to explain explicitly why he or she did not include in the RFC mild mental limitations that were found in step two" because "the different steps serve distinct purposes, the degrees of precision required at each step

9

differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized") (quotation omitted); *Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229, at *5 (N.D. Iowa Mar. 30, 2016) ("The ALJ was not required to include specific, moderate limitations on concentration, persistence, or pace in his RFC assessment or hypothetical question to the Vocational Expert (VE), simply because he found plaintiff had these limitations in his "paragraph B" criteria analysis at Step Three"); *Crane v. Colvin*, No. 4:13-046-DGK-SSA, 2014 WL 460858, at *4 (W.D. Mo. Feb. 5, 2014) (providing that the purpose of the special technique at steps two and three "is to evaluate the severity of the claimant's mental impairments to determine whether they meet or equal a listing, not to determine Plaintiff's RFC."). Indeed, SSR 96-8P provides in pertinent part that:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

1996 WL 374184, at *4 (Soc. Sec. Admin. July 2, 1996).

Here, the ALJ thoroughly reviewed the Claimant's mental health history and use of medications to treat her mental health issues. *See* AR at 221-22. The ALJ summarized her findings as follows:

> In sum, the undersigned finds that the claimant's history of major depressive disorder, generalized anxiety disorder, and methamphetamine dependence

10

> warranted limiting the claimant to simple, routine tasks, no fast-paced production requirements, and only occasional interaction with supervisors, co-workers and the public. The undersigned does not find that greater limitations are warranted and in particular, notes the claimant's generally unremarkable mental status exams, improvement with medication, and the fact that notes indicated in July 2023, that the claimant had gone back to work. Exs. 1F/2, 12-13, 24-25, 29-30; 3F/6-9; 4F/3; 6F/1-3; 7F/3; 10F/5, 13.

(*Id.* at 222-23.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 221.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

B.  **RFC Assessment relating to Invasive Lobular Carcinoma**

    1.  *Parties' Arguments*

Claimant argues that the ALJ "committed legal error by determining that [Claimant's] invasive lobular carcinoma was a non-severe impairment without developing the record regarding the expected duration of the condition." (Doc. 18 at 13.) Claimant maintains that the ALJ "failed to discharge [her] duty to develop the record by obtaining

11

Case 3:25-cv-03013-CJW-MAR    Document 21    Filed 03/10/26    Page 11 of 15

medical opinion evidence regarding the expected duration and functional impact of [Claimant's] cancer diagnosis and treatment." (*Id.* at 14.) Claimant contends that"[b]y concluding that invasive lobular carcinoma would not cause significant functional limitations for twelve months without any medical evidence supporting this conclusion, the ALJ improperly substituted [her] lay opinion for medical expertise." (*Id.* at 15.)

The Commissioner argues that "the ALJ issued her decision in February 2024 that demonstrated [Claimant] failed to establish disabling impairments prior to her date last insured in December 2023." (Doc. 15 at 10.)

### 2. *Relevant Law*

As discussed above, the ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

### 3. *Analysis*

Pursuant to 20 C.F.R. § 404.1512(b)(1)(ii), the Commissioner "will develop your complete medical history for the 12-month period prior to the month you were last insured for disability insurance benefits[.]" *See also Turpin v. Colvin*, 750 F.3d 989, 993 (8th

Cir. 2014) ("If an applicant for disability benefits is not insured for Title II purposes, then we only consider the applicant's medical condition as of his or her date last insured."). Claimant's date last insured is December 31, 2023. (AR at 217.) At the hearing, the ALJ left the record open for 30 days to allow Claimant to provide the ALJ the opportunity to consider any records "to see what the doctors are saying and see if there is anything in there that would support this as a severe medically-determinable impairment or a listing-level condition before I issue any kind of decision." (Id. at 389-90.) On November 22, 2023, Claimant's representative provided the ALJ with a letter stating that "[t]he record was left open in order to provide further evidence. We will not be submitting anything further at this point." (*Id.* at 629.) In her decision, the ALJ addressed Claimant's breast diagnosis as follows:

> In July 2023, the claimant was referred for consultation regarding her breast cancer risk. At the time, the claimant was asymptomatic, and denied a breast lump, and breast tenderness. Ex. 10F/3. On September 20, 2023, the claimant had an abnormal right breast MRI. Ex. 10F/27. On October 2, 2023, the claimant underwent a breast biopsy which showed invasive lobular carcinoma, stage 1A. Ex. 10F/11, 14, 36. On October 11, 2023, the claimant's surgical options were discussed with her. Ex. 10F/14. Notes indicated that she elected to proceed with surgery. Ex. 10F/15. At her hearing, the claimant reported that her surgeries were being scheduled. There are no indications in the record of symptoms related to work functioning lasting sufficient duration.

(*Id.* at 218.) Under these circumstances, I find no error in the ALJ's consideration of Claimant's breast diagnosis in October 2023, two months before the date last insured and Claimant's decision not to supplement the record after the hearing. Moreover, the medical records that were supplemented with the Appeals Council and relied on by Claimant are from December 2023 through April 2024. *See* Doc. 128 at 15 (citing AR at 21, 26-27, 34, 80). Claimant contends that these records confirm that her "cancer treatment has indeed lasted over twelve months and continues to cause functional

13

limitations." (*Id.*)  These records do not show treatment lasting over twelve months, as she was diagnosed with cancer in October 2023.  Furthermore, the latest records identified from April 2024, include the following from a follow-up visit:

> There have been no new events since her last visit.  She claims complete adherence to the adjuvant endocrine therapy, without any missed doses.  She denies any hot flashes or any significant myalgias/arthralgias.  Her appetite is good and denies any weight loss.  She is able to maintain the activities of daily living without assistan[ce].  She denies any symptoms concerning for cancer recurrence—there have been no fever, night seats, weight loss, shortness of breath, unusual pain in the bones, head or elsewhere in the body, new breast lump, nipple retraction or discharge, or change in urine or stool color.

(*Id.* at 37-38.)  Based on the foregoing, I find Claimant's argument on this issue lacks merit.

To reiterate from above, in determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for her complaints.  (AR at 221-23.)  The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (*Id.* at 221.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant.  *See Lacroix*, 465 F.3d at 887.  Further, I find that the ALJ's decision is based on a fully and fairly developed record.  *See Cox*, 495 F.3d at 618.  Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record.  *See Guilliams*, 393 F.3d at

803. Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 10th day of March, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa